Yunchao Song (SBN 323484)
Juris Path Law Firm PC
17800 Castleton Street, Suite 316
City of Industry, CA 91748
Telephone: (626) 391-4015
Facsimile: (626) 604-0123
*paul.song@jpjplaw.com*

Attorneys for Petitioner Fanyu Lin

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

FANYU LIN, an individual;

Petitioner,

v.

Warden of Adelanto ICE Processing Center; ANDRE QUINONES, Acting Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,

Respondents.

**Case No.**

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner Fanyu Lin ("Ms. Lin" or "Petitioner") (A-Number: 226-094-917), by and through the undersigned counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and respectfully alleges as follows:

**<u>INTRODUCTION</u>**

1. Petitioner is a native and citizen of the People's Republic of China presently detained at the Adelanto ICE Processing Center, Adelanto, California. Petitioner, by and through her undersigned counsel, hereby files this petition for writ of habeas corpus to compel her

immediate release from immigration detention. Petitioner was previously released by ICE in June 2024, after a determination that she was neither a flight risk nor a danger to the community. Respondents re-detained Petitioner without first providing her notice or a due process hearing to determine whether her detention is justified

2. The Due Process Clause of the Fifth Amendment requires the government to provide noncitizens with notice and a hearing prior to re-detention. Here, Petitioner's rights were violated when she was re-detained without such process and continue to be violated each day that she remains detained.

## CUSTODY

3. Petitioner is currently in Respondents' physical custody. Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California. She is under Respondents' and their agents' direct control.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under the color of the authority of the United States, and such custody violates the Constitution, law, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241.

5. The venue lies in the Central District of California, the judicial district in which Petitioner is currently detained. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

//

**THE PARTIES**

7. Petitioner is a citizen of China who has resided in the United States since June 2024, when Petitioner entered without inspection, was apprehended by immigration authorities, and was later released from custody. Petitioner was re-detained on August 8, 2026, and has remained detained ever since.

8. The Warden of Adelanto ICE Processing Center is sued in his/her official capacity. He/She has immediate physical custody of Petitioner under the facility's contract with ICE to detain noncitizens. The Warden is a legal custodian of Petitioner.

9. Respondent ANDRE QUINONES is sued in his official capacity as Acting Director of Enforcement and Removal Operations of ICE's Los Angeles Field Office. Respondent QUINONES is a legal custodian of Petitioner and has the authority to release her.

10. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of ICE. In this capacity, Respondent VENTURELLA directs and oversees ICE's Enforcement and Removal Operations, the component agency responsible for Petitioner's detention. Respondent VENTURELLA is a legal custodian of Petitioner and has the authority to release her.

11. Respondent TODD BLANCHE is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent BLANCHE is a legal custodian of Petitioner.

12. Respondent MARKWAYNE MULLIN is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent MULLIN is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. Respondent MULLIN is a legal custodian of Petitioner.

**LEGAL FRAMEWORK**

13. The Constitution guarantees that the writ of habeas corpus is "available to every

individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

14. Recently, the Ninth Circuit held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS 22798 (9th Cir. July 30, 2026).

15. 8 U.S.C. § 1226(a) is the discretionary detention authority for noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under this statute, a noncitizen would be entitled to a bond hearing, and any custody redetermination would have to be based on whether the noncitizen is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

**Procedural Due Process**

16. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

17. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State

deprives a person of liberty . . . .").

18. Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop*., 510 U.S. 43, 53, 59-61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

**Substantive Due Process**

19. Immigration detention is civil rather than punitive and is constitutionally permissible only insofar as it serves the Government's legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

20. Although 8 U.S.C. § 1226(b) provides that the Government may rearrest noncitizens, the BIA has clearly recognized that "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance," a position adopted by the Ninth Circuit. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("Thus, absent changed circumstances ... ICE cannot re-detain Panosyan.").

21. "While this rule was adopted as a matter of agency practice, its grounding is constitutional." *Yixi Sun v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-03595, 2026 U.S. Dist. LEXIS 156111 (C.D. Cal. July 14, 2026). Where the Government has previously determined that detention is unnecessary, substantive due process permits re-detention only upon a material change in circumstances demonstrating that the noncitizen now presents a danger to the community or a meaningful risk of flight. *Id.*

22. Consistent with this principle, courts have repeatedly held that re-detention without a material change in circumstances violates substantive due process. *See e.g. Velazquez v. Laro*se, No. 26-cv-3108-RFL-SBC, 2026 U.S. Dist. LEXIS 115917 ("Petitioner's detention violates

substantive due process because the government previously determined that Petitioner should be released, and does not assert that there has been a material change of circumstances."); *Yan Lu v. Los Angeles Field Dir., et al.*, No. 5:26-CV-575-JAK-SP, 2026 WL 1455317 (C.D. Cal. May 7, 2026) (same); *Gadea-Hernandez v. Mullin*, No. 5:26-cv-04072-MBK, 2026 U.S. Dist. LEXIS 170022 (C.D. Cal. July 30, 2026); *Calderon v. Mullin*, No. 5:26-cv-04143-MBK, 2026 U.S. Dist. LEXIS 170021 (C.D. Cal. July 30, 2026).

## **STATEMENT OF FACTS**

23. Petitioner entered the United States on or about June 11, 2024, without inspection and was apprehended by Immigration and Customs Enforcement ("ICE").

24. On or around June 13, 2024, the Department of Homeland Security issued Petitioner a Notice to Appear, charging Petitioner with removability under the Immigration and Nationality Act § 212(a)(6)(A)(i) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an Immigration Judge.

25. On or about June 13, 2024, ICE released Petitioner from custody on her own recognizance pursuant to Section 236 of the Immigration and Nationality Act.

26. Following her release, Petitioner filed an application for asylum. That application remains pending before the Immigration Court.

27. Since the release, Petitioner made good-faith efforts to comply with all reporting requirements imposed by ICE. Petitioner worked to support herself and lived openly and peacefully in the community.

28. On or about February 15, 2026, Petitioner was arrested by the Los Angeles Police Department for an alleged violation of California Penal Code section 647(b), a misdemeanor offense. She was released on the same day. To date, no criminal charges have been filed against Petitioner.

29. On or about July 15, 2026, Petitioner reported to ICE as directed. ICE continued Petitioner's release and directed Petitioner to report again on September 28, 2026.

30. On or about August 8, 2026, Petitioner received a telephone call from an ICE officer directing her to come outside her residence. Petitioner complied with the officer's instruction and,

upon exiting her residence, was immediately taken into ICE custody.

31. When Petitioner was arrested, she was not presented with any warrant authorizing her detention, nor was she informed of the reason for her arrest. Although Mandarin is her first language, she was not provided with an interpreter during the arrest.

32. When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including her cellular phone.

33. At no time prior to her re-detention was Petitioner notified that her release had been revoked or that she would be re-detained. She was not informed of any alleged change in circumstances warranting re-detention, was not afforded advance notice, and was not provided an opportunity to contest her re-detention before being taken into custody.

**COUNT ONE**

**(Violation of the Procedural Due Process Clause)**

34. Petitioner repeats and incorporates by reference the allegations set forth above.

35. Petitioner's detention violated the Due Process Clause. Petitioner possesses a protected liberty interest, and by revoking her release and re-detaining her without providing advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the alleged basis for the detention, ICE disregarded the procedural safeguards required under the Clause to ensure that the deprivation of Petitioner's protected liberty interest accords with the Constitution. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

36. A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Petitioner was previously released on her own recognizance. After her release, Petitioner made good-faith efforts to comply with all reporting requirements imposed by ICE and was never informed that her release had been revoked. Petitioner therefore has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438 (N.D. Cal. June 26, 2025) (collecting cases

finding that noncitizens who have been released have a strong liberty interest).

37. Petitioner's protected liberty interest was further reaffirmed when Respondents elected not to detain her on July 15, 2026, despite being aware of her criminal arrest.

38. Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

39. The first *Mathews* factor strongly favors Petitioner. "Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Federal district courts in California, including this Court, have repeatedly found that noncitizens, like Petitioner, who were previously detained, placed in removal proceedings, found to be neither a flight risk nor a danger to the community, and released on their own recognizance, "therefore maintain a 'protected liberty interest in remaining out of custody.'" *Zhibin Xie v. Larose*, No. 3:25-cv-03649-RBM-MSB, 2026 WL 92066 (S.D. Cal. Jan. 13, 2026) (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025)); *see also Shan Yan v. Fereti Semaia*, 5:26-cv-00674-KK-DSRx (C.D. Cal. Feb. 18, 2026).

40. The second *Mathews* factor also strongly favors Petitioner. There is a "significant risk that the government will erroneously deprive [Petitioner] of her liberty interest if it does not provide her with a pre-detention hearing, where, as here, 'the [Petitioner] has not received any bond or custody…hearing.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) (citing *Singh v. Andrews*, No. 1:25-CV-00801, 2025 U.S. Dist. LEXIS 132500, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the

community. *Zadvydas*, 533 U.S. at 690 (citation omitted). However, the government has offered no evidence that Petitioner's detention would serve either purpose. Immigration authorities initially released Petitioner after determining that detention was unnecessary. That release reflects a determination that Petitioner did not present an unacceptable risk of flight or danger to the community. *See Zapata v. Kaiser*, 801 F. Supp. 3d 919, 938 (N.D. Cal. 2025). Although Petitioner was arrested in February 2026, no criminal charges were filed. Moreover, Respondents knew of that arrest when Petitioner reported to ICE on July 15, 2026, yet permitted her to remain at liberty. Less than one month later, Respondents re-detained her without identifying any further change in circumstances or providing an opportunity to be heard. Under these circumstances, the risk of erroneous deprivation was substantial.

41. The third *Mathews* factor likewise favors Petitioner. The Government's interest in re-detaining Petitioner without a pre-deprivation hearing is minimal, particularly where Respondents previously released her and again permitted her to remain at liberty on July 15, 2026, despite knowing of her arrest. Further, additional procedural safeguards, including a hearing before a neutral decision-maker, are "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public by keeping Petitioner detained. *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

42. The *Mathews* factors show that Petitioner is entitled to a bond hearing. At such a hearing, the government must prove that she is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025). And that hearing should have occurred before Petitioner was re-detained. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985); *see also Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .")

43. Respondents had ample opportunity to provide Petitioner with constitutionally adequate process before depriving her of her liberty but chose not to do so. Instead, an ICE officer directed Petitioner by telephone to come outside her residence and immediately detained her when

she complied, without prior notice or an opportunity to contest the basis for re-detention. Respondents thereby deprived Petitioner of her liberty without due process. *See Faizyan v. Casey*, Case No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (holding that "due process required the petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained.")

44. Courts confronting materially similar due process violations have consistently held that immediate release, rather than a delayed post-deprivation hearing, is the appropriate remedy because it restores the *status quo* ante that existed before Respondents violated a noncitizen's constitutional rights. *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026).

45. Moreover, "allowing the government to cure such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); *see also Eduardo Marquez Ibarra v. Kristi Noem*, No. 5:26-cv-01007-MEMF-MAA (C.D. Cal. Mar. 20, 2026); *Reyes Servin v. Semaia*, No. 5:26-cv-02745-MAR, 2026 U.S. Dist. LEXIS 130761 (C.D. Cal. June 4, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect").

46. Accordingly, Petitioner is entitled to immediate remedial release rather than a belated bond hearing.

**COUNT TWO**

**(Violation of the Substantive Due Process)**

47. Petitioner repeats and incorporates by reference the allegations set forth above.

48. The Due Process Clause of the Fifth Amendment protects individuals against arbitrary governmental deprivation of liberty. Civil immigration detention is constitutionally

permissible only when it bears a reasonable relationship to a legitimate governmental purpose and is not punitive in nature. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the immigration context, the Government's recognized regulatory interests include ensuring a noncitizen's appearance at immigration proceedings and protecting the community from danger. *Id.*

49. Because immigration detention is civil rather than punitive, physical confinement cannot constitutionally be imposed merely as an end in itself. Rather, detention must bear a reasonable relationship to the Government's legitimate regulatory purposes. *See Zadvydas*, 533 U.S. at 690.

50. Here, Respondents previously determined that Petitioner's detention was unnecessary and released her on her own recognizance. Although Petitioner was later arrested in February 2026, no criminal charges were filed against her. More importantly, Respondents were aware of that arrest when Petitioner reported to ICE on July 15, 2026, yet affirmatively elected not to detain her and directed her to report again in September 2026.

51. Respondents therefore could not re-detain Petitioner absent a material change in circumstances demonstrating that detention had become necessary to prevent flight or danger to the community. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Respondents identified no such change between July 15 and August 8, 2026.

52. Accordingly, Petitioner's detention violates the substantive component of the Due Process Clause of the Fifth Amendment. Petitioner is therefore entitled to a writ of habeas corpus ordering her immediate release from Respondents' custody.

**COUNT THREE**

**(Unlawful Detention Under 8 U.S.C. § 1226(a))**

53. Petitioner repeats and incorporates by reference the allegations set forth above.

54. 8 U.S.C. § 1226(a) applies to noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." Under § 1226(a), detention is discretionary, and individuals may be released on bond or conditional parole as approved by the Attorney General.

55. The Ninth Circuit held that noncitizens, such as Petitioner, "present without

admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS 22798 (9th Cir. July 30, 2026).

56. Under § 1226(a), a noncitizen may be arrested only on a warrant and would be entitled to a bond hearing before an immigration judge and must be released if the noncitizen "does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

57. This statutory framework applies to Petitioner. Petitioner was previously released by ICE in June 2024. Since that time, she has resided in the United States for more than two years and was already within the United States when she was re-detained by ICE in August 2026. Her detention therefore arises under 8 U.S.C. § 1226(a).

58. When the ICE agents detained Petitioner, she was not presented with any warrant authorizing the detention as required under § 1226(a). In addition, at no time prior to her re-detention was Petitioner notified that her prior release was revoked.

59. By detaining Petitioner without providing a warrant, Respondents have acted in excess of their statutory authority under 8 U.S.C. § 1226(a). As a result, Petitioner's continued detention violates the Immigration and Nationality Act and is unlawful.

60. Therefore, Petitioner respectfully requests that this Court order her release from detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Issue the writ of habeas corpus and order Respondents to show cause within three days why the requested relief should not be granted;
3. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;
4. Declare that Respondents' detention of Petitioner violates the INA and the Due Process Clause of the Fifth Amendment;

5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately without the imposition of any conditions more restrictive than those previously in place;
6. In the alternative, only if the Court concludes that Petitioner is not legally entitled to immediate release under the present circumstances based on a specific legal authority, order Respondents to provide Petitioner with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 7 days, at which the government bears the burden of establishing by clear and convincing evidence that continued detention is appropriate to prevent her flight or to protect the public, which would provide a significantly lesser level of due process protection than the immediate release to which Petitioner submits she is entitled;
7. Order Respondents to return all of Petitioner's personal belongings, including her cellular phone;
8. Upon release, prohibit Respondents from imposing conditions of supervision more restrictive than those previously in place, absent a hearing consistent with due process;
9. Upon release, enjoin Respondents from re-arresting, or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent her flight or to protect the public;
10. Require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing;
11. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act and any other applicable authority;
12. Grant further relief as the Court finds just and proper.

Dated: August 17, 2026

Juris Path Law Firm, PC

*/s/Yunchao Song*

Yunchao Song, Esq.
Attorneys for Petitioner Fanyu Lin